UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CLAIR ARCHULETA,<br><br>Petitioner,<br><br>v.<br><br>PATRICK COVELLO,<br><br>Respondent. | Case No.23-cv-05222-JSC<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**INTRODUCTION**

Petitioner David Clair Archuleta, a prisoner of the State of California proceeding without representation by an attorney, filed a petition for a writ of habeas corpus seeking relief from his state conviction. The amended petition is the operative pleading. (ECF No. 11.) Petitioner asserts he received ineffective assistance of counsel at trial and on appeal. (*Id.* at 7, 10, 12.) Respondent has filed an answer, exhibits, and a supporting memorandum arguing the claims should be denied. (ECF Nos. 18, 18-1, 19.) For the reasons discussed below, the claims are without merit, and the petition, as amended, is DENIED.

**BACKGROUND**

1. Procedural Background

In 2022, Petitioner was convicted in Lake County Superior Court of residential burglary, receipt of stolen property, possession of ammunition by a prohibited person, and possession of a firearm by a felon. (ECF No. 19-4 at 542-47.) The court sentenced him to 17 years and four months in state prison. (*Id.* at 561.)

In 2023, the California Court of Appeal affirmed the judgment, and the California

Rev. 09-18

1 Supreme Court denied Petitioner's petition for review. (ECF No. 11 at 2-3.) The California

2 Supreme Court also denied a petition for a writ of habeas corpus in 2023. (*Id.* at 4.) Petitioner

3 filed an unsigned federal habeas petition with this Court on October 13, 2023 (ECF No. 1),

4 followed by a signed amended petition on April 26, 2024. (ECF No. 11.)

5      Petitioner claims trial counsel rendered ineffective assistance by failing to investigate and

6 prepare for trial, failing to meet in person to discuss trial strategy, and delivering an ineffective

7 closing argument. (ECF No. 11 at 7, 10.) Petitioner further claims appellate counsel rendered

8 ineffective assistance by refusing to raise on appeal the ineffectiveness of trial counsel, and by

9 failing to investigate exculpatory evidence Petitioner argues would have proven his innocence.

10 (*Id.* at 12.)

    2. Factual Background

       The California Court of Appeal summarized the facts of the case as follows:

> This case involves three residential burglaries that occurred in Clearlake Oaks within the same week. On December 24, 2020, David Barnett contacted the police after various items were stolen from his garage. The items included a new generator, a camp barbecue, and a Bluetooth speaker. On or around December 25, 2020, Jesse Borgnis went to his vacation house in Clearlake Oaks after being informed of a break-in there. The doorjamb to the front door was broken, and the house was in disarray. Items were missing from almost every room, including a television and television equipment, a wakeboard, a dartboard, a bottle of liquor, and other small miscellaneous items. Finally, on December 29, 2020, Richard West went to his vacation house in Clearlake Oaks after he was likewise notified of a break-in. When he arrived, he observed that the front door appeared to have been pried open by a tool, based on the damage to the doorframe. Several items were missing from the house, including a television and a security camera.
>
> Shortly before 1:00 a.m. on December 30, 2020, Deputy McCabe was on patrol and saw a vehicle down the street with no headlights on, parked in front of a residence and partially blocking the roadway. Someone was either loading or unloading property from this vehicle. McCabe became suspicious because he knew there had been several burglaries in this immediate area in the last several weeks. McCabe approached the residence and saw Archuleta on the front porch, setting down what appeared to be a new generator that still had tags on it. McCabe then searched the vehicle, which he confirmed belonged to Archuleta, and found gloves, pry bars, and chisels inside.
>
> McCabe entered the residence to secure it while he waited for the issuance of a search warrant. During the execution of the

>warrant, he and another deputy found a box of .30 caliber ammunition on a shelf as well as a loaded pistol in a box in the bedroom. Various items that were reported stolen were also found in the residence, including the television, wakeboard, bottle of liquor, and security camera.
>
>At 10:00 p.m. on February 3, 2021, Deputy McCabe returned to the residence to arrest Archuleta. McCabe knew that Archuleta's girlfriend, Nicole Hard, lived there based on previous contacts he had with her, and he believed that Archuleta lived there as well. Both Archuleta and Hard were inside and were placed under arrest. During the arrest, Archuleta asked McCabe to retrieve his wallet from inside his backpack in the living room. McCabe did so and found a large capacity magazine and a cartridge in the backpack. Archuleta then told McCabe that the magazine and cartridge belonged to the gun obtained on the search warrant on December 30th.
>
>After Archuleta denied having any other firearms, McCabe searched the residence and found, behind the dryer, another loaded pistol that contained the same type of ammunition as the ammunition found in Archuleta's backpack. No record was located when McCabe performed a record check on this firearm. McCabe also found a box of cartridges in the kitchen and four loaded magazines in a jewelry box in one of the bedrooms. He observed that both male and female clothing were inside this bedroom.

(ECF No. 19-8.)

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), this Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id*. § 2254(d). In making this determination, a court may consider the lower court's analysis. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991) (permitting review of the last reasoned state court decision). Summary denials are presumed to be adjudications on the merits though "the presumption may be overcome when there is reason to think some other explanation for the

3

state court's decision." *Harrington v. Richter*, 562 U.S. 86, 99-100 (2011).

With respect to Section 2254(d)(1), "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409. The only definitive source of "clearly established" federal law under 28 U.S.C. § 2254(d)(1) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Id*. at 412. While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Clark v. Murphy*, 331 F.3d 1062, 1070-71 (9th Cir. 2003).

Factual determinations by the state court are reviewed under 28 U.S.C. § 2254(d)(2) (quoted above) and 28 U.S.C. § 2254(e)(1) (requiring federal court to presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence). Section 2254(d)(2) applies to intrinsic review of a state court's process, or situations in which the petitioner challenges the state court's findings based entirely on the state court record, whereas Section 2254(e)(1) applies to challenges based on extrinsic evidence or evidence presented for the first time in federal court. *Taylor v. Maddox*, 366 F.3d 992, 999-1000 (9th Cir. 2004).

A federal court reviewing a state court's decision under 28 U.S.C. § 2254(d), when confronted with an unexplained decision from the last state court to have been presented with the

4

1  issue, "should 'look through' the unexplained decision to the last related state-court decision that
2  does provide a relevant rationale. It should then presume that the unexplained decision adopted
3  the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). Here, the last state court to
4  have been presented with this claim was the California Supreme Court, which denied the claim in
5  an unexplained opinion. (ECF No. 11 at 4.) If the state court gave no explanation for its denial,
6  this Court "must determine what arguments or theories supported, or as here, could have
7  supported, the state court's decision; and then it must ask whether it is possible fair-minded jurists
8  could disagree that those arguments or theories are inconsistent with the holding in a prior
9  decision of [the Supreme Court]." *Harrington*, 562 U.S. at 102.

## DISCUSSION

1. Ineffective Assistance of Trial Counsel

Petitioner challenges trial counsel's performance for inadequate investigation and preparation, failure to meet in person and discuss trial strategy, and ineffective closing argument. (ECF No. 11 at 7, 10.)

a. Legal Standard for Ineffective Assistance of Trial Counsel

To prevail on a Sixth Amendment ineffective assistance of counsel claim, a federal habeas petitioner must first establish counsel's performance "fell below an objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "The burden of rebutting this presumption rests squarely on the defendant, and it should go without saying that the absence of evidence cannot overcome it." *Dunn v. Reeves*, 594 U.S. 731, 738 (2021) (per curiam). On habeas review, moreover, a federal court is "doubly deferential" insofar as it takes "a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (internal quotation marks and citations omitted).

Second, a petitioner must establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

5

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial." *Strickland*, 466 U.S. at 694. When the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Hinton v. Alabama*, 571 U.S. 263, 275 (2014) (internal quotation marks and citation omitted).

"Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

    b. Analysis

        i. Pretrial Investigation and Preparation

Petitioner claims his attorney, Michael Hauptman ("Hauptman"), failed to prepare for trial by conducting an inadequate pretrial investigation. (ECF No. 11 at 7.) Petitioner's habeas petition alleges the following: Hauptman "failed to obtain" two forms of video evidence—(1) body-cam footage from Deputies McCabe and Drewry taken at the time of arrest, and (2) two thumb drives containing home-security footage from Ms. Hards' residence capturing the search leading to discovery of incriminating evidence. (*Id.* at 7-8.) Petitioner made "numerous requests" for Hauptman to "obtain the Body Cam footage" from his arresting officers, McCabe and Drewry, and asked Hauptman to "bring a Lap Top computer to the Lake County Jail" to view the footage with him. (*Id.* at 8.) Petitioner says "Hauptman was informed early on that Petitioner had possession of two thumb drives from [his] girlfriend Nicole Hard's residence containing footage from her home security cameras." (*Id.*) And Hauptman received the home-security footage from his former attorney, Angelina Potter, who "had the thumb drives delivered" to Hauptman.[1] (*Id.*) After Petitioner raised concerns about the home-security footage, Hauptman "became visibly

---

[1] Petitioner's petition alleges the thumb-drive evidence passed through several attorneys before reaching Hauptman. He alleges "Petitioner's Grandmother delivered the Thumb Drives to Attorney Feimer; that Feimer delivered them to Attorney Angelina Potter; that Potter delivered them to Attorney Anderson; that Anderson then returned them to Potter." (ECF No. 11 at 8.)

6

1   unsettled and angry" and "denied to Petitioner that [he] ever received them from Potter."[2]  (*Id.*)

2   Hauptman told Petitioner, "I know Deputy McCabe," and "I don't believe that he tampered with

3   evidence in this case." (*Id.*)

4       Petitioner argues Hauptman should have used the body-cam and home-security footage to

5   support a motion to suppress the seized evidence based on an "illegal search and seizure." (*Id.* at

6   7-8.) He contends the body-cam footage contained "exculpatory evidence" showing "McCabe and

7   Drewry conducted an illegal search and subsequent seizure of Petitioner's girlfriend's house."

8   (*Id.*) Petitioner does not provide specific facts explaining what the body-cam footage would

9   reveal; instead, he argues the home-security footage would show McCabe "tampered with

10  evidence when [he] turned the security camera for the front door of the residence away from its set

11  position so it could no longer film the search [of] the residence." (*Id.* at 8.) Petitioner alleges "he

12  repeatedly informed Hauptman that [he] believe[d] that the search of the residence where McCabe

13  and Drewry approached Petitioner was an illegal search and seizure and the video would show

14  this." (*Id.*) Petitioner does not specify which video he refers to. Throughout the petition,

15  however, Petitioner alleges the body-cam and home-security footage would have supported a

16  motion to suppress based on an unlawful search and seizure. (*Id.* at 7-8.)

17      Assuming, without deciding, Hauptman failed to retrieve the body-cam and home-security

18  video footage, and that such failure constituted deficient investigation, the record does not show a

19  reasonable probability the outcome of Petitioner's trial would have been different if counsel had

20  conducted further investigation and a suppression hearing had been held. *See Strickland*, 466 U.S.

21  at 691.

22      With respect to the body-cam footage, on June 24, 2021, Petitioner's former attorney,

23  Anderson, filed a motion to suppress evidence relying on the same body-cam footage Petitioner

24  claims Hauptman failed to obtain. (ECF No. 19-1 at 97.) Anderson sought suppression of "[a]ny

25  and all observations" by law enforcement, "[a]ny and all comments" made by Petitioner and Ms.

---

[2] The Court notes Petitioner's assertion that Hauptman failed to "obtain" the video footage is inconsistent with his allegation that he asked Hauptman to "bring a Lap Top computer" to the jail to view the body-cam footage (which implies Hauptman had the footage), and with his allegation that Potter delivered the home-security footage to Hauptman. (ECF No. 11 at 8.)

7

Hard after December 30, 2020, and all physical evidence seized or observed at the residence. (*Id.* at 91-92.) In support, Anderson stated a body-cam video "show[ed] the officers moving and examining small items and looking in areas a person could not fit." (*Id.* at 97.) At the suppression hearing, the judge ruled "with the exception of the identification of the generator by [Barnett] on the front porch, I find that all the evidence was lawfully seized and any search of the premises was lawful." (ECF No. 19-2 at 53.) Petitioner conclusorily asserts the body-cam footage would show "McCabe and Drewry conducted an illegal search" of Ms. Hard's residence (ECF No. 11 at 8), but does not explain how a second motion to suppress by Hauptmann would have produced a different result. *See Ortiz-Sandoval v. Clarke*, 323 F.3d 1165, 1170 (9th Cir. 2003) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)) (requiring petitioner to show "there is a reasonable probability that the jury would have reached a different verdict absent the introduction of the unlawful evidence"); *Lowry v. Lewis*, 21 F.3d 344, 347 (9th Cir. 1994) (finding no prejudice where the validity of the search was previously upheld). So, Petitioner has failed to show Hauptman's failure to further investigate or use the body-cam footage resulted in prejudice.

With respect to the home-security footage, the record shows on May 11, 2021, Anderson moved for a continuance "as there is a pending thumb drive [containing the home-security footage] that may reveal additional discovery . . .." (ECF No. 19-1 at 8.) The trial court had already ruled all evidence, except Mr. Barnett's identification of the generator on the porch, was lawfully seized. (ECF No. 19-2 at 53.) Petitioner offers no basis to conclude further investigation of the home-surveillance footage would have rendered a new suppression motion by Hauptmann successful. *See Strickland*, 466 U.S. at 696 ("[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."); *see also Villafuerte v. Stewart*, 111 F.3d 616, 632 (9th Cir. 1997) (rejecting ineffective assistance claim where petitioner presented no evidence of what further investigation or preparation would have accomplished). The record shows the search and arrest were conducted pursuant to warrants, and nothing alleged by Petitioner regarding the home-surveillance footage (or indeed the body cam footage) suggests the warrants were not valid. (ECF No. 19-2 at 40.) Petitioner alleges the home-security footage would show McCabe "tampered

1  with evidence" and that McCabe "turn[ed] the security camera for the front door of the residence
2  from its set position so the camera could no longer film the search of the residence." (ECF No. 11
3  at 8.) But the Court is unaware of any authority, and Petitioner cites none, suggesting a search
4  becomes unlawful merely because it was not recorded. Nor does Petitioner explain what, if
5  anything, occurred during the search to render it unlawful. Petitioner has failed to meet his burden
6  of showing he suffered prejudice from Hauptmann's failure to investigate or use the home-security
7  video footage.

Petitioner fails to demonstrate prejudice from Hauptman's alleged failure to further investigate or use the body-cam and home-security footage. Even if Hauptman had performed deficiently in his investigation and use of such evidence, there is no "reasonable probability" Petitioner suffered prejudice therefrom. *See Ortiz-Sandoval*, 323 F.3d at 1170. So, Petitioner is not entitled to relief on this claim.

          ii.   Failure to Meet Petitioner in Person to Discuss Trial Strategy

Next, Petitioner argues Hauptman was ineffective for failing to meet in person to discuss trial strategy. (ECF No. 11 at 10-11.) Even if Hauptman's conduct fell below professional norms, Petitioner again fails to show the prejudice required for his claims to succeed.

"Adequate consultation between attorney and client is an essential component of competent representation of a criminal defendant. *United States v. Tucker*, 716 F. 2d 576, 581 (9th Cir. 1983). However, "[t]he amount of consultation required will depend on the facts of each case, [and] the consultation should be sufficient to determine all legally relevant information known to the defendant." *Id.* at 582; *see also Moody v. Polk*, 408 F.3d 141, 148 (4th Cir. 2005) (quoting *United States v. Olsen*, 846 F.2d 1103, 1108 (7th Cir. 1988)) ("[T]here is no established 'minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel.'").

There is no need to analyze whether the number of times Hauptman met with Petitioner constitutes effective assistance because the record does not support Petitioner's claim that counsel's failure to meet with him caused prejudice at trial. Beyond asserting counsel failed to discuss trial strategy in person, Petitioner identifies no material information he wished to convey

or receive, and he offers no facts showing counsel's conduct affected the outcome. *See Anderson v. Calderon*, 232 F.3d 1053, 1086 (9th Cir. 2000) (rejecting generalized claims of harm to the attorney-client relationship). Petitioner's claim is too conclusory to warrant habeas relief.

### iii. Decision to Testify

Petitioner claims Hauptman rendered ineffective assistance by pressuring him to testify despite his refusal. (ECF No. 11 at 11.) A tactical decision to advise a defendant to testify is entitled to deference when it reflects informed and reasonable trial strategy. *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994). The ultimate decision whether to testify, however, rests with the defendant. *United States v. Mullins*, 315 F.3d 449, 453 (9th Cir. 2002). Here, the record does not show Petitioner testified during his criminal trial. Consequently, there was no resulting prejudice. Petitioner is not entitled to federal habeas corpus relief on this claim.

### iv. Evidentiary Exhibits

Next, Petitioner asserts Hauptman was ineffective for providing "zero evidentiary exhibits in defense of the petitioner." (ECF No. 11 at 11.) This argument is too vague to satisfy either *Strickland* prong. Petitioner does not identify any exhibit or its exculpatory value. To the extent he links this failure with Hauptman's alleged failure to conduct a sufficient pretrial investigation, the argument is addressed above. Moreover, trial counsel's strategic decisions about introducing evidentiary exhibits enjoy broad deference. *See Strickland*, 466 U.S. at 690 (recognizing strategic decisions by defense counsel are "virtually unchallengeable"). Nothing in the record suggests counsel erred by failing to introduce exhibits, or presenting additional exhibits would have affected the outcome of trial.

### v. Trial Counsel's Ineffective Assistance in Closing Argument

Finally, Petitioner argues Hauptman rendered ineffective assistance based on remarks made during closing argument at his state trial. (ECF No. 11 at 11.) He challenges Hauptman's statement to the jury that "Mr. Archuleta is probably not innocent. That's a phrase that he's probably not going to be entitled to." (ECF No. 19-4 at 515.) Hauptman explained this did not mean Petitioner was "guilty of each of [the] charges." (*Id.*) Indeed, Hauptman's concession focused on the firearm and ammunition charges. (*Id.* at 500.) He told the jury those charges "are

10

far less likely to cause issues in your terms of your ability to decide than the other issues which I think are far more significant." (*Id.*)  Petitioner does not show these comments, or counsel's overall approach in closing, satisfy the unreasonableness prong under *Strickland*.

"The right to effective assistance extends to closing arguments." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  "Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Id.* at 5-6.  "Closing arguments should sharpen and clarify the issues for resolution by the trier of fact, but which issues to sharpen and how best to clarify them are questions with many reasonable answers." *Id.* at 6 (citation omitted).  "Judicial review of a defense attorney's summation is therefore highly deferential-and doubly deferential when it is conducted through the lens of federal habeas." *Id.*

Under this highly deferential review, Hauptman did not act ineffectively by conceding Petitioner's involvement in some of the charged crimes but not all of them.  Hauptman's approach was a tactical decision entitled to judicial deference.  *See Roblero v. Kernan*, 756 F. App'x 688, 689 (9th Cir. 2018) (finding it reasonable for counsel to concede guilt on lesser charges to build credibility with the jury when contesting more serious charges).  Given the strength of the evidence on the firearm and ammunition charges, counsel's strategy was not unreasonable.

Further, contrary to Petitioner's arguments, Hauptman's summation did not focus on whether Petitioner was innocent but on whether the prosecution had proven guilt.  Hauptman told the jury the "distinction is very important," (ECF No. 19-4 at 516) and used it as the "unifying theme" of his closing.  *See Yarborough*, 540 U.S. at 6.  Hauptman stressed there was significant doubt as to the burglary, receipt of stolen property, and vandalism charges, noting "the People have failed utterly to prove" those offenses.  (ECF No. 19-4 at 507.)  As *Yarborough* explains, "confessing a client's shortcomings . . . is precisely the sort of calculated risk that lies at the heart of an advocate's discretion.  By candidly acknowledging his client's shortcomings, counsel might have built credibility with the jury and persuaded it to focus on the relevant issues in the case." *Id.* at 9.  Here, Hauptman's candid acknowledgment that the evidence was strong on certain charges

was a reasonable strategic attempt to build credibility with the jurors for his argument that the evidence was insufficient on other charges. As a result, Petitioner has not met the burden of showing deficient performance by trial counsel in closing argument. *See id.* at 8 ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.").

### 2. Ineffective Assistance of Appellate Counsel

Petitioner also claims his appellate counsel provided ineffective assistance by (1) refusing "to prepare an appeal that contained ineffective assistance of counsel claims against Mitchell Hauptman" and (2) appellate counsel's failure to "investigate the . . . body-cam video and thumb drive evidence." (ECF No. 11 at 13-14.) Convicted defendants are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The *Strickland* two-prong test applies to ineffective assistance claims against appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 263 (2000). To prevail, a defendant "must show that counsel's advice fell below an objective standard of reasonableness" and establish a "reasonable probability that, but for counsel's unprofessional errors, [the defendant] would have prevailed on appeal." *Miller v. Kenney*, 882 F. 2d 1428, 1434 (9th Cir. 1989).

#### a. Appellate Counsel's Failure to Raise Trial Counsel's Ineffectiveness

In support of the direct appeal, appellate counsel filed a twelve-page brief with citations to relevant legal authority and quotations from the trial record and thorough arguments about the two issues he determined had merit. (ECF No. 19-5 at 8, 11.) The decision not to raise on appeal Petitioner's suggested claims about trial counsel's performance was reasonable because, for the reasons discussed above, they were meritless, and raising them, besides being futile, could have weakened stronger arguments.[3] As a result, it was neither unreasonable nor prejudicial for appellate counsel not to raise them. *See Miller*, 882 F.2d at 1434 (explaining counsel remains above an objective standard of competence and causes no prejudice by declining to raise a weak

---

[3] Petitioner submits a letter from appellate counsel stating he had "not heard anything from Mr. Hauptman," and warning Petitioner that he was "letting [himself] fixate on fantasies about evidence that doesn't exist and/or wouldn't affect matters if it did." (ECF No. 11 at 24.)

issue on appeal); *Jones v. Barnes*, 463 U.S. 745, 745 (1983) ("Defense counsel assigned to prosecute an appeal from a criminal conviction does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant.").

        b. Appellate Counsel's Failure to Investigate Exculpatory Evidence

   Petitioner's claim appellate counsel should have investigated the body-cam and home-security evidence also fails. "[A]ppellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal." *Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001); *see also Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002) (holding appellate counsel is not ineffective for refraining from arguing an issue with little or no prospect of success); *Rupe v. Wood*, 93 F.3d 1434, 1444-45 (9th Cir. 1996) ("[T]he failure to take futile action can never be deficient performance."). Petitioner alleges appellate counsel "refused to obtain" the "exculpatory" video evidence but does not explain how this would have affected the outcome of his appeal. (ECF No. 11 at 14.) And for the reasons discussed above, trial counsel's failure to investigate this evidence did not prejudice Petitioner. For the same reasons, Petitioner has not shown a "reasonable probability that, but for" his appellate counsel's failure to investigate both forms of video evidence, Petitioner "would have prevailed on appeal." *Miller*, 882 F. 2d at 1434. Accordingly, Petitioner is not entitled to habeas relief on this claim.

             *  *  *

   The record does not support a conclusion that Petitioner received ineffective assistance of trial or appellate counsel. Consequently, the California Supreme Court's denial of these claims was neither "contrary to" nor an "unreasonable application" of "clearly established" federal law. *See* 28 U.S.C. § 2254(d)(2). Accordingly, Petitioner is not entitled to habeas relief.

## CONCLUSION

   For the reasons discussed above, the petition for a writ of habeas corpus is DENIED. Moreover, a certificate of appealability will not be issued, *see* 28 U.S.C. § 2253(c)(1)(A), because no reasonable jurist would find the Court's denial of Petitioner's claims on its merits "debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: October 21, 2025

JACQUELINE SCOTT CORLEY
United States District Judge

14